## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01953-REB-NYW

ELOY GARZA,

      Plaintiff,

v.

WESTERN STONE OF LYONS, LLC, and
PAUL W. FRYSIG

      Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendants' Motion for Summary Judgment, [#74, filed May 20, 2016]. The court considers these motions pursuant to 28 U.S.C. § 636(b)(1), the Order of Reference dated August 21, 2014, [#15], and the Memorandum of Referral dated May 20, 2016, [#75]. The court has reviewed the Parties' briefing [#74; #81; #86], the applicable law, and the entire case file. The court finds that oral argument would not materially assist in the resolution of this motion. For the following reasons, the court respectfully **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART.**

### PROCEDURAL AND FACTUAL BACKGROUND

      Plaintiff Eloy Garza ("Plaintiff" or "Mr. Garza"), filed his original complaint in this matter on July 14, 2014. [#1]. On December 12, 2014, Plaintiff amended his complaint as a matter of course pursuant to Fed. R. Civ. P. 15 (a)(1)(B). [#42] ("First Amended Complaint"). According to Mr. Garza's First Amended Complaint, Defendant Western Stone of Lyons, LLC ("Western Stone") and Defendant Paul W. Frysig ("Defendant Frysig" or "Mr. Frysig") (collectively,

"Defendants") failed to pay Plaintiff overtime, as required by applicable federal and state law, illegally withheld a portion of Plaintiff's earnings for rent, and "fraudulently misreported Mr. Garza's earnings to the IRS." [#42 at ¶¶ 13–16]. Because of this, Plaintiff brought federal claims under the Fair Labor Standards Act ("FLSA" or "Act"), 29 U.S.C. § 201 *et seq.*, and 26 U.S.C. § 7434 for willful filing of fraudulent information returns; and state law claims under: (1) the Colorado Mechanics' Lien Trust Fund Act, Colo. Rev. Stat. ("C.R.S.") §§ 38-22-127, 18-4-401, 18-4-405 for breach of fiduciary duty and civil theft; (2) the Colorado Wage Claim Act, C.R.S. § 8-4-101 *et seq.*, for the willful withholding of wages; (3) the Colorado Minimum Wage of Workers Act and Minimum Wage of Workers Act Rules, C.R.S. § 8-6-118, and C.C.R. § 7-1103-1, for the recovery of overtime pay; (4) common law claims for breach of contract or, alternatively, promissory estoppel; and (5) common law claims for unjust enrichment or quantum meruit. *See* [*id.* at ¶¶ 17–67].

On December 29, 2014, Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint for lack of subject matter jurisdiction. [#45]. Defendants argued that Mr. Garza was not entitled to FLSA benefits because neither Western Stone, nor Defendant Frysig was an enterprise, as defined by the FLSA, and that individual coverage was inapplicable because Plaintiff's conclusory allegations that he is entitled to FLSA coverage were "facially inadequate to establish jurisdiction." *See* [#45 at 4, 11]. In addition, Defendants sought dismissal of Plaintiff's 26 U.S.C. § 7434 claim because Plaintiff had not established that Defendants engaged in interstate commerce, as required by the statute. *See* [*id.* at 12]. Therefore, according to Defendants, because Plaintiff's federal law claims failed to establish subject matter jurisdiction, the court similarly lacked supplemental jurisdiction over Plaintiff's state law claims. *See* [*id.* at 14].

On June 24, 2015, this magistrate judge issued a Recommendation, later adopted by the presiding judge, the Honorable Robert E. Blackburn, [#52], denying Defendants' motion to dismiss. *See* [#51]. In the Recommendation, this court concluded that Defendants' "jurisdictional" challenges to Mr. Garza's FLSA claim were actually nonjurisdictional merits-based challenges better reviewed under Rule 12(b)(6). *See* [*id.* at 7]. Accordingly, this court concluded that Mr. Garza sufficiently pled both enterprise and individual coverage under the FLSA. *See* [*id.* at 8–9]. In addition, this court concluded that subject matter jurisdiction was appropriate under 26 U.S.C. § 7434, as the statute itself made no mention of an interstate commerce requirement, and thus the court also had supplemental jurisdiction over Mr. Garza's state law claims. *See* [*id.* at 10–11]. The court entered a Scheduling Order on October 8, 2015, that contemplated a deadline for the filing of dispositive motions on May 20, 2016. [#71 at 9].

On May 20, 2016, Defendants filed a Motion for Partial Summary Judgment. [#74]. Defendants argue that Mr. Garza'a claims under the FLSA, the Colorado Mechanics' Lien Trust Fund Act, the Colorado Wage Claim Act, and his claims under the common law doctrines of promissory estoppel and unjust enrichment or quantum meruit should be dismissed, as no genuine issue of material facts exists regarding these claims. *See* [*id.* at 1–2]. Specifically, Defendants argue that summary judgment in their favor is appropriate because: (1) Western Stone is not an enterprise, as defined by the FLSA, because its revenues do not exceed $500,000; (2) Western Stone is not a contractor, as required by the Colorado Mechanics' Lien Trust Fund Act; (3) Western Stone did not receive sixty (60) days' notice of Mr. Garza's Colorado Wage Claim Act claim prior to Plaintiff filing suit, as required by the statute; and (4) the express terms of Western Stone's employment contract with Mr. Garza preclude recovery under promissory estoppel, as well

as under unjust enrichment or quantum meruit.[1]  *See* [*id.* at 3–17].

Plaintiff filed a response in opposition to the Defendants' Motion for Partial Summary Judgment on June 24, 2016.  [#81].   First, Mr. Garza contends that regardless of whether Defendants meet the statutory prerequisite for enterprise coverage (revenues in excess $500,000), he is entitled to FLSA protections under individual coverage.  *See* [*id.* at 7].  Next, Plaintiff argues that he is entitled to bring claims under the Colorado Mechanics' Lien Trust Fund Act for breach of fiduciary duty and theft, because he is a "laborer" who has "furnished laborers, materials, services, or labors," a class of persons covered by the statute.  [*Id.* at 12].  Next, Plaintiff asserts that his failure to serve 60 days' notice on Defendants regarding his Colorado Wage Claim Act does not preclude litigating this claim but, instead, only precludes imposition of penalties under section 8-4-109(3) of the statute.  *See* [*id.* at 13].  Finally, Plaintiff contends that the express employment contract never contemplated overtime wages; thus, the employment contract does not preclude the equitable relief he seeks.  *See* [*id.* at 15].

In their reply, Defendants argue that Mr. Garza is "misapplying the Colorado Mechanic's Lien Trust Fund Statute," as the statute's purpose is to protect contractors from property owners not to protect employees from employers and, additionally, the statute does not apply to Mr. Garza because a mechanic's lien exists only when there is a contract between a contractor and the property owner.  *See* [#86 at 2].  In addition, Defendants generally reassert their argument that Plaintiff's claims under quasi-contract doctrines fail because the express employment contract

---

[1] The following claims as set forth in the Amended Complaint are not subject to this instant Motion for Partial Summary Judgment: (1) Second Claim for Relief for Willfully Filing Fraudulant [sic] Information Returns Pursuant to 26 U.S.C. § 7434 against all Defendants; (2) Fifth Claim for Relief for Recovery of Overtime Under C.R.S. § 8-6-118; C.C.R. § 7-1103-1 against Western Stone; and (3) Sixth Claim for Relief for Breach of Contract against Western Stone.  *Compare* [#42] *with* [#74].

precludes any implied-in-law contract.  *See* [*id.* at 3–4].   The court considers the Parties' arguments in turn.

## MATERIAL FACTS

Defendants' Motion for Partial Summary Judgment fails to include a statement of undisputed facts as required by D.C.COLO.LCivR. 56.1(A), though Plaintiff included a recitation in his Response.  *Compare* [#74] *with* [#81].   Instead of striking Defendants' Motion for Partial Summary Judgment as non-compliant, the following recitation of the undisputed material facts is drawn from, to the best of the court's ability, the Parties' pleadings and briefing.  The court accepts the facts set forth in Plaintiff's First Amended Complaint and response in opposition to summary judgment as undisputed, "except to the extent that it can determine the existence of a genuine dispute."  *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1280 (D. Colo. 2009) (adopting the magistrate judge's Recommendation on Defendants' motions for summary judgment that failed to include proper statement of facts sections); *see also McCollum v. U.S.*, No. 12–cv–01175–PAB–MJW, 2014 WL 788062, at *1–2 (D. Colo. Feb. 26, 2014) (accepting Plaintiff's response to Defendant's motion for summary judgment, despite Plaintiff's failure to include a statement of facts section, because Plaintiff's "brief makes clear that he disputes" some facts alleged by Defendant); *but see U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Mr. Garza is a Colorado resident who "[i]n or around 2000 or 2001" entered into an employment contract with Defendant Western Stone.  [#42 at ¶¶ 3, 8; #74 at 4, 7–8].  Western Stone is a stone fabrication company based in Lyons, Colorado, owned and operated by Defendant Frysig.  *See* [#74 at 8; #81 at Statement of Facts ("SOF") ¶¶ 1, 2].  Although locally based, some

of Western Stone's fabricated materials were either imported from other states or were shipped to other states.  *See* [#42 at ¶ 22; #81 at SOF ¶¶ 15–16].  At one point, Western Stone's website claimed that its "unique products have been used in many showcase homes and landscapes throughout the world," and that "[o]ut-of-state deliveries are shipped using either UPS, DHL, Yellow Freight or Brokered Freight."  [#42 at ¶ 22].

At all times relevant to this action, Mr. Garza was an hourly employee of Western Stone, working at Western Stone's "stone yard."  *See* [#74 at 9; #81 at SOF ¶4].  As an employee, Mr. Garza "cut stone, weighed stone, created stone countertops and furniture, and moved stone throughout Western Stone's operation."  [#81 at SOF ¶ 5; #42 at ¶ 10].  Western Stone's operations included selling the fabricated stone to "contractors and landscapers and homeowners for their particular construction projects."  [#74 at 8; #81 at SOF ¶¶ 6 ("at least some of the stone Mr. Garza worked on was incorporated into construction projects in Colorado and was custom made for these construction projects."), 7].  On at least one occasion, Mr. Garza and Mr. Frysig not only sold the fabricated stone materials, but actually constructed a patio with the purchased stone. *See* [#74 at 12; #81 at SOF ¶ 8].

Because of Mr. Garza's various job responsibilities, he "frequently worked 70-80 hours in a week, but Mr. Garza was never paid <u>any</u> overtime."[2]  [#81 at SOF ¶11 (emphasis in original)].  In addition, Defendants would sometimes "move [Plaintiff's] hours from one week to another" to

---

[2] Because Defendants fail to offer a statement of undisputed facts, and because their Motion for Partial Summary Judgment and reply do not challenge Plaintiff's assertion, other than noting that Plaintiff and Defendant had an employment contract, the court finds as undisputed that Mr. Garza frequently worked more than 40 hours in a week.  *See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002) ("Before the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its initial responsibility of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law.") (internal quotations and citation omitted).

avoid paying Plaintiff overtime wages.[3]  [*Id.* at ¶ 12 (quoting Defendant Frysig's deposition transcript in which he admitted to "put[ting] [hours worked over 40] in another day.")].  Then, "in or about the summer of 2013," the employment relationship ended.  [#42 at ¶ 9; #74 at 4, 8; #81 at SOF ¶3].  On July 14, 2014, Mr. Garza filed suit against Defendants seeking unpaid wages and unpaid overtime.  *See* [#1].

## LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)).  In doing so, the court views the evidence in a light most favorable to the non-moving party.  *See Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009) (quotations and citation omitted).

Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson*, 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could

---

[3] Again, Defendant makes no attempt to dispute this fact.

return a verdict for either party. *Anderson*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

"Although [o]ur summary judgment standard requires us to view the facts in the light most favorable to the non-moving party[,] it does not require us to make unreasonable inferences in favor of the non-moving party." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (quoting *Starr v. Downs*, 117 F. App'x 64, 69 (10th Cir. 2004)). Once the moving party demonstrates an absence of evidence supporting an essential element of the opposing party's claims, the burden shifts to the opposing party to show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. To satisfy this burden, the non-movant must point to specific facts in an affidavit, deposition, answers to interrogatories, admissions, or other similar admissible evidence demonstrating the need for a trial. *Id.*; *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992). "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson,* 477 U.S. at 249, 252).

## ANALYSIS

### I.    The Fair Labor Standards Act

"The legislative history of the [FLSA] shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn*

*Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).  Accordingly, the "FLSA requires overtime pay of time and a half of regular pay for an employee who works more than forty hours per week and who is 'engaged in commerce . . . or . . . employed in an enterprise engaged in commerce.'" *Reagor v. Okmulgee Cty. Family Res. Ctr.*, 501 F. App'x 805, 808 (10th Cir. 2012) (quoting 29 U.S.C. § 207(a)(1)); *see also* 29 U.S.C. § 203(b) (defining "commerce" to mean "trade, commerce, transportation, transmission, or communication among the several states or between any State and any place outside thereof.").  Therefore, "[e]mployment may be covered under the [FLSA] pursuant to either 'individual' or 'enterprise' coverage." *Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985).

Under enterprise coverage, the FLSA defines "entries engaged in commerce" as an enterprise that "has employees engaged in commerce or . . . that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."  29 U.S.C. § 203(s)(1)(A)(i).  In addition, enterprise coverage requires an enterprise to have an "annual gross volume of sales made or business done [that] is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)."  *Id.* at § 203(s)(1)(A)(ii).

On the other hand, to be covered under the FLSA's individual coverage, "an employee must directly participat[e] in the actual movement of persons or things in interstate commerce." *Reagor*, 501 F. App'x at 809 (internal quotations and citations omitted); *see also N.M. Pub. Serv. Co. v. Engel*, 145 F.2d 636, 638 (10th Cir. 1944) ("[T]o be engaged in commerce within the meaning of that phrase, an employee must be actually engaged in the movement of commerce, or the services he performs must be so closely related thereto as to be for all practical purposes an essential part thereof.").  In determining whether the employee is "engaged in commerce," the

9

court exams the activities of the employee and not the activities of the employer. *See Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959). Accordingly, the test is not "whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it." *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943).

Defendants seek summary judgment in their favor as to Plaintiff's FLSA claim, arguing that Western Stone is not an "enterprise," as defined by the FLSA. *See* [#74 at 3]. Specifically, Defendants assert that it is an undisputed fact that Western Stone "never had annual revenues in excess of $500,000." [*Id.* at 4]. Defendants continue that in the approximately thirteen years Plaintiff worked for the Defendants, Western Stone's revenues never exceeded $500,000 and, in addition, Plaintiff had no evidentiary basis for claiming otherwise. *See* [*id.* at 4–5]. In support, Defendants cite the attached affidavits of Defendant Frysig and Diane Johnson, the accountant for Western Stone. *See* [*id.* at 4; #74-1; #74-2]. Defendant Frysig attests that "Western Stone has never had annual revenues in excess of $500,000" and, similarly, Ms. Johnson attests that "[f]or the years I have provided tax services for Western Stone, 2012, 2013, 2014, and 2015, Western Stone has never had annual revenues in excess of $500,000." *See* [#74-1 at 1; #74-2 at 2]. Defendants provide no other evidence to corroborate this assertion.

Conversely, Plaintiff's response attaches Western Stone's tax returns from 2011 through 2014, which indicate that Western Stone did not claim revenues in excess of $500,000 for any of those years. *See* [#81 at 5–6; #81-5 at 2–5]. Despite this evidence, Plaintiff alleges, "Defendants Western Stone and Frysig did a significant amount of business in cash, which would not appear on their tax return." [#81 at 6]. However, Plaintiff provides no evidence to support this allegation

10

and, without more, the court is "unable to accept [Plaintiff's] argument that the Court should infer that Defendants under-reported their annual sales or business done," based on unsupported allegations that Defendants conducted a "significant amount of business in cash." *Arilus v. Joseph A. DiEmmanuele, Jr., Inc.*, 895 F. Supp. 2d 1257, 1262 (S.D. Fla. 2012), *aff'd*, 522 F. App'x 881 (11th Cir. 2013) ("[T]he Court finds that Plaintiffs' speculative beliefs, not based on direct knowledge or experience with the financial practices of the business, are insufficient to defeat Defendants' motion for summary judgment.") (internal quotations and citation omitted).

Plaintiff also contends, however, "[w]hether or not a FLSA employer has revenues of $500,000.00 or more is <u>only</u> relevant to the determination of enterprise coverage," and the absence of a factual dispute as to that assertion does not deny Mr. Garza protection under the FLSA's individual coverage. *See* [#81 at 7 (emphasis in original)]. The court respectfully agrees with Mr. Garza's assertion. Contrary to Defendants' belief that Mr. Garza's FLSA claim should be dismissed because Western Stone is not an "enterprise" under the Act, an employee is entitled to coverage under the FLSA if that employee is "engaged in commerce or in the production of goods for commerce, *or* is employed in an *enterprise* engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1) (emphasis added); *see also Tony and Susan Alamo Found.*, 471 U.S. at 295 n.8 (explaining that coverage can be either enterprise or individual); [#51 at 8–9 (concluding that Plaintiff's sufficiently pled facts alleging individual coverage survived Defendants' Rule 12(b)(6) challenge)].

Plaintiff argues that there is at least a triable issue as to Mr. Garza's entitlement to individual coverage, given that Plaintiff worked on stone imported from other states and because Western Stone's own website proclaimed that its products crossed state boundaries. *See* [#81 at 8,

11

SOF at ¶¶ 15–16]. In support of this argument, Plaintiff cites to the deposition of Defendant Frysig and screenshots of Western Stone's website, both of which indicate that Mr. Garza worked on materials from out-of-state and that Western Stone shipped its materials out-of-state. *See* [#81-3 (deposition transcript of Defendant Frysig, testifying to materials coming from out of state); #81-4 (screenshots of Western Stone's website, claiming that its products "have been used in many showcase homes and landscapes throughout the world.")]. Defendant raises no challenge to Plaintiff's entitlement to individual coverage in their reply or otherwise. Accordingly, the court concludes that Defendants have not carried their burden regarding Plaintiff's FLSA claim, and therefore, respectfully RECOMMENDS that summary judgment on this claim be DENIED.

**II.    The Colorado Mechanics' Lien Trust Fund Act**

Colorado Revised Statute section 38-22-127(1), otherwise known as the Colorado Mechanics' Lien Trust Fund Statute, provides:

> All funds disbursed to any contractor or subcontractor under any building, construction, or remodeling contract or on any construction project shall be held in trust for the payment of the subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made.

C.R.S. § 38-22-127(1). The Colorado General Assembly's purpose and intent when enacting this statute was "to protect homeowners, laborers and providers of construction materials from dishonest or profligate contractors." *AMEC Earth & Envtl., Inc. v. SolSource Energy Sols., LLC*, 854 F. Supp. 2d 1014, 1019 (D. Colo. 2012) (quotations and citation omitted). "To meet this purpose, the statute imposed duties on contractors to ensure that subcontractors were paid for their contributions." *Id.* Accordingly, the Mechanic's Lien Trust Fund Statute creates an express trust,

*In re Barnes*, 377 B.R. 289, 298 (Bankr. D. Colo. 2007), and is one that is sufficient to establish a fiduciary relationship between a homeowner and a contractor, as well as between a contractor and subcontractors, laborers, or materials suppliers.  *See In re Walker*, 325 B.R. 598, 603 (D. Colo. 2005) (reversing the Bankruptcy Court's holding that a fiduciary relationship exists only between contractors and subcontractors or between contractors and laborers or materialmen, and not between a homeowner and a contractor).  The Mechanic's Lien Trust Fund Statute "appears to provide wronged laborers and materialmen with a second source of protection and relief, separate and apart from the traditional mechanic's lien practice."  *In re Regan*, 311 B.R. 271, 276 (Bankr. D. Colo. 2004).

In light of this fiduciary relationship, two groups may enforce Mechanic's Lien Trust Fund Statute claims when funds are not properly dispersed by the person in control of such funds: "subcontractors, laborers, or material suppliers who either (1) have a lien or may have a lien against property or (2) claim or may claim against a principal or surety."  *In re Regan*, 151 P.3d 1281, 1286 (Colo. 2007) (citing C.R.S. § 38-22-127(1)); *see also In re Barnes*, 377 B.R. at 298 ("Under Colorado law, an individual in complete control of the finances and financial decisions of an entity which violated the Trust Fund Statute is personally liable for such violation.").   In determining whether a claimant has or may have a lien, the Colorado Supreme Court has held that a lien under the Mechanic's Lien Trust Fund Statute is defined by section 38-22-101(1) ("Colorado Mechanics' Lien Statute"), which defines lien as "an interest laborers and material suppliers have in a property to which they added value at the request of the owner or the owner's agent, such as the contractor."  *Id.* (explaining that the Mechanic's Lien Trust Fund Statute allows subcontractors, laborers, and material suppliers to assert claims directly against contractors if they have a lien).

However, claimants are not required to have a properly perfected mechanics' lien or still have the ability to perfect a mechanics' lien, so long as he can demonstrate that his work added value to property. *See In re Barnes*, 377 B.R. at 298–297 (citing *In re Regan*, 151 P.3d at 1289).

Lastly, "[a]ny person who violates the provisions of subsection (1) and (2) of this section commits theft, as defined in section 18-4-401, C.R.S." C.R.S. § 38-22-127(5). This requires a beneficiary of the trust to establish "each of the elements of the crime of theft as set out in section 18–4–401, including the requisite intent." *People v. Mendro*, 731 P.2d 704, 706 (Colo. 1987). However, merely demonstrating a violation of the Mechanic's Lien Trust Fund Statute does not establish that the crime of theft has been committed. *In re Barnes*, 377 B.R. at 301. Only if a trust beneficiary can establish all elements of criminal theft, is he entitled to treble damages, attorney's fees, and costs under section 18-4-405, C.R.S. ("The Rights in Stolen Property Statute"). *See In re Brennan*, 449 B.R. 114, 119 (Bankr. D. Colo. 2011) (discussing *Itin v. Ungar*, 17 P.3d 129 (Colo. 2000) (holding that all elements of criminal theft must be established to recover under the Rights in Stolen Property Statute)). Defendants raise several challenges to Plaintiff's claim under the Mechanic's Lien Trust Fund Statute.

**Employee versus Laborer.** To start, Defendants contend that not only was Western Stone not a contractor or subcontractor covered under the statute, neither was Plaintiff, as an employee of Defendants. *See* [#74 at 8]. Rather, Defendants argue, that they and Plaintiff merely sold stone to contractors, landscapers, or homeowners "who then improve [the] owners' real property," and thus were not entitled to any mechanics' liens. [*Id.* at 9]. Conversely, Plaintiff asserts that although there is no case law on whether an employee is covered under the Mechanic's Lien Trust Fund

Statute,[4] he is covered nonetheless as a "laborer." *See* [#81 at 11]. In support, Plaintiff argues that Colorado courts have interpreted similar provisions of the Colorado Mechanics' Lien Statute (C.R.S. § 38-22-101(1)) to include employees of general contractors and subcontractors as a class entitled to the protections of the Mechanics' Lien Statute. *See* [*id.*].

The court agrees with Mr. Garza's assertion, as the Colorado Supreme Court has held, "those who have a lien are laborers and material suppliers who have added value to that property." *In re Regan*, 151 P.3d at 1285; *see also Kobayashi v. Meehleis Steel Co.*, 472 P.2d 724, 728 (Colo. App. 1970) ("It necessarily follows that a party furnishing labor or materials in accordance with an agreement with such subcontractor or statutory agent is entitled to a mechanic's lien under our statute if such materials are required by and meet the standards imposed by the general construction contract."). It is undisputed that Mr. Garza fabricated stone products as an employee of Defendants, and that Defendants sold these products to contractors, landscapers, and homeowners "who then improve[d] [the] owners' real property." *See* [#74 at 9 (citing Defendant Frysig's affidavit, which states "Western Stone then sells the stone to contractors and landscapers and homeowners for their particular construction projects")]. Accordingly, Plaintiff has at least raised a genuine factual dispute as to whether he is a laborer under the Mechanic's Lien Trust Fund Statute entitled to pursue a claim for unpaid trust funds. *See In re Regan*, 151 P.3d at 1286 (discussing the two groups that may enforce the Trust Fund Statute to include laborers).

*Contractor.* However, Plaintiff does not directly address Defendants' contention that they are not a contractor under the statute, but rather argues that he was not required to work on the

---

[4] Plaintiff is correct in this assertion, and the court need (and does) not reach the issue as to whether Colorado courts would extend the Mechanic's Lien Trust Fund Statute to workers who were "employees" of a class of persons covered by the Mechanic's Lien Trust Fund Statute because it finds that Mr. Garza is considered a "laborer" under the Statute.

construction site to benefit from the protections of the Mechanic's Lien Trust Statute.  [#81].  It is undisputed that Mr. Garza and Western Stone would cut, weigh, and polish stone to fill specific orders for specific clients.  *See* [#74 at 9–10 (quoting Mr. Garza's deposition testimony about his responsibilities as an employee); #81 at SOF ¶ 5 (detailing Mr. Garza's responsibilities); #81-3 at 85:15–20 (Defendant Frysig testifying that customers would place orders for a piece of stone to be cut a particular way for a particular project, and it was Defendants responsibility to adhere to those specifications)].  The Colorado Court of Appeals has held that "any person who agrees to perform a substantial, specified portion of the work of construction of a given building which is the subject of a general construction contract in accordance with the plans and specifications of such contract is a subcontractor," as designated under the general mechanics' lien law.  *Kobayashi*, 472 P.2d at 728.  The undisputed facts reflect that on at least one occasion, Mr. Garza and Mr. Frysig not only sold the fabricated stone materials, but actually constructed a patio with the purchased stone.  *See* [#74 at 12; #81 at SOF ¶ 8].

Though this court refrains from acting as an advocate for either party, summary judgment is not proper merely due to a lack of response.  *See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002).  Summary judgment is only appropriate under Rule 56 of the Federal Rules of Civil Procedure when the moving party has carried its burden to establish that there is no genuine issue of material fact and those undisputed facts lead to the conclusion that the moving party is entitled to judgment as a matter of law.  *Id.*  Accepting the Parties' undisputed facts and based on the record before it, this court finds that it cannot conclude, as a matter of law, that Defendants do not constitute a "contractor or subcontractor" under the Mechanic's Lien Trust Fund Statute.  *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other

materials in the record."); *but see Chung v. El Paso Cty./Colorado Springs School Dist. #11*, 115 F. Supp. 3d 1242, 1252 (D. Colo. 2015) ("If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor.")

*Projects.*   Next, Defendants contend that they had "no building, construction or remodeling contract or any construction project," while Plaintiff was an employee and, accordingly, received no funds required to be held in trust under the Trust Fund Statute. *See* [#74 at 8–14]. Defendants continue that the extent of its work was conducted at its own stone yard—it cut the stone at its stone yard; all sales occurred at the stone yard; and all materials were retrieved at the stone yard. *See* [*id.* at 8–14]. Plaintiff responds that his work for Defendants required him to fill orders for construction projects covered by the Mechanic's Lien Trust Fund Statute. *See* [#81 at SOF ¶ 7, 12]. Plaintiff alleges further that Defendants did not always pay him for his work on these projects because on a few occasions Mr. Garza hand-delivered payment to Defendant Frysig, but did not receive his share of the proceeds. *See* [#81 at SOF ¶10; #81-1 at ¶¶ 8, 13]. There appears to be a material dispute as to whether any of the projects performed by Mr. Garza while employed by Defendants falls within the Mechanic's Lien Trust Fund Statute that cannot be resolved on summary judgment and is more appropriately resolved by the factfinder or by the presiding judge at trial, after Plaintiff's evidence is presented.   Accordingly, this court respectfully RECOMMENDS that summary judgment be DENIED as to Plaintiff's claim under the Mechanic's Lien Statute.

### III.   Colorado Wage Claim Act

The Colorado Wage Claim Act ("CWCA"), Colo. Rev. Stat. § 8-4-101 *et seq.*, "is designed to require employers to pay wages earned by their employees in a timely manner." *Brownlee v. Lithia Motors, Inc.*, 49 F. Supp. 3d 875, 878 (D. Colo. 2014) (citing Colo. Rev. Stat. § 8-4-109(1)(a) ("[w]hen an interruption in the employer-employee relationship by volition of the employer occurs, the wages or compensation for labor or service earned, vested, determinable, and unpaid at the time of such discharge is due and payable immediately"). The CWCA defines wages as "all amounts for labor or service performed by employees . . . if the labor or service to be paid for is performed personally by the person demanding payment," C.R.S. § 8-4-101(9); however, the wages must be both "vested and determinable as of the date of termination," *Rohr v. Ted Neiters Motor Co.*, 758 P.2d 186, 188 (Colo. App. 1988) (quotations and citation omitted), which can be established "if it is vested pursuant to an employment agreement at the time of an employee's termination." *Fang v. Showa Entetsu Co., Ltd.*, 91 P.3d 419, 422 (Colo. App. 2003) (quotations and citation omitted). If an employer wrongfully withholds earned wages, the CWCA provides an employee "adequate judicial relief." *Montemayor v. Jacor Commc'ns, Inc.*, 64 P.3d 916, 923 (Colo. App. 2002). This is true even if the employer had the right to terminate the employee. *See generally Lee v. Great Empire Brod., Inc.*, 794 P.2d 1032, 1034 (Colo. App. 1989).

In this case, Mr. Garza's employment relationship with Western Stone ended around the summer of 2013. *See generally* [#42 at ¶46]. Mr. Garza alleges that Defendants withheld wages for hours Mr. Garza worked, overtime wages for hours worked in excess of 40 per week, and "illegally withheld" wages "pursuant to C.R.S. § 8-4-105."[5] *See* [*id.* at ¶ 45]. In moving for

---

[5] C.R.S. § 8-4-105 details the list of permitted deductions an employer is allowed to withhold from

summary judgment, Defendants argue that Plaintiff failed to give 60 days' notice to Defendants prior to filing suit, a prerequisite to maintaining such a claim pursuant to Colo. Rev. Stat. § 8-4-109(3)(a).  *See* [#74 at 15].  Section 8-4-109(3)(a) states "[i]f an employer refuses to pay wages or compensation in accordance with subsection (1) of this section, the employee, his or her designated agent, or the division may send a written demand for the payment."

It is undisputed that Mr. Garza did not send a written demand for wages within 60 days of his termination.  *See* [#74 at 16; #81 at 13].  But Plaintiff argues that the written demand requirement is irrelevant and does not create a bar to his action, because he is not seeking penalties under the CWCA.  *See* [#81 at 13–14].  The CWCA states that if an employer fails to pay an employee the earned unpaid wages after receiving a written demand within fourteen days,[6] the employer shall be liable for not only the wages owed, but for statutory penalties.  *See* C.R.S. § 8-4-109(b) (listing the statutory penalties).  However, an employee's failure to provide written notice does not bar his ability to recover unpaid wages; rather, it bars only his ability to recover statutory penalties.  *See Giuffre v. Marys Lake Lodge, LLC*, Nos. 11–cv–00028–PAB–KLM, 12–cv–00377–PAB, 2013 WL 673987, at *5 (D. Colo. Feb. 25, 2013).  Accordingly, Defendants argument that Plaintiff cannot maintain a CWCA claim for failure to send a written demand fails as a matter of law.

---

an employee's wages. These include, *inter alia*, taxes; garnishments; or loans, advances, or equipment provided to an employee pursuant to a written agreement.  Mr. Garza's Amended Complaint alleges that Defendants illegally withheld rent from his earnings, *see* [#42 at ¶¶ 14, 45], in violation of section 8-4-105.  Defendants do not move for summary judgment on this ground, and accordingly, this court does not analyze.

[6] Previous versions of the statute, which are applicable to this case, allowed for a 60-day repayment window after receiving the written demand for wages.

Defendants also contend that they did not owe any unpaid wages to Mr. Garza upon the termination of his employment. *See* [#74 at 16]. Mr. Garza does not address this argument in response. [#81]. Nevertheless, as discussed above, the court cannot simply enter summary judgment in favor of Defendants based on Plaintiff's lack of response. In his First Amended Complaint, Mr. Garza alleges that he "was not paid for some of the hours he worked, was not paid overtime for hours worked in excess of 40 in a week as required by state and federal law, and had wages illegally withheld pursuant to C.R.S. § 8-4-105 for rent." [#42 at ¶ 45]. On April 12, 2016, Mr. Garza testified at his deposition that Defendants did not owe him any money when his employment ended with Western Stone, *see* [*id.*; #81-2 at 99:22–100:2, 101:17 ("My wages, no. [Defendant Frysig] paid that before.")], and that Defendant Frysig would issue a new check to Mr. Garza if he ever thought he was not being paid properly for his hours worked, *see* [#81-2 at 42:18–25, 43:1–7)]. As mentioned, the CWCA provides a legal remedy for employees to recover wages that are "earned and unpaid" at the time of the employee's termination. C.R.S. § 8-4-104(1); *see Lee*, 794 P.2d at 1034 ("[E]ven though an employee's discharge may constitute a violation of contract (or other legal wrong) by the employer, the wage statute is not applicable to the circumstance if the employer pays all wages earned by the employee as of the time of his discharge."). Accordingly, an employee cannot seek wages that were either paid or unearned, and the statute itself does not create a substantive right to compensation for labor or services performed absent some employment agreement. *See Barnes v. Van Schaack Mortg., a Div. of Van Shaack Co.*, 787 P.2d 207, 209–210 (Colo. App. 1990).

Plaintiff offers a sworn declaration, dated June 24, 2016, in which he attests that "I also was not paid for all of the hours I worked at Western Stone," *see* [#81-1 at ¶ 13], and timesheets

that Plaintiff claims "are examples of weeks where I was not paid for all of the hours I worked," *see* [*id.*; #81-4 at 2–8 (timesheets)].   Upon reviewing Mr. Garza's timesheets, it is unclear how these documents corroborate his allegations that Defendants owe him unpaid wages contemplated by his employment agreement under the CWCA.   The timesheets appear to calculate his hours worked multiplied by his hourly wage; there is nothing to indicate that he was not paid for all the hours he claimed in these timesheets.   *See* [#81-4 at 2–8].   In addition, although Mr. Garza's declaration cannot be disregarded simply because it conflicts with his deposition testimony, *see Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986), the court is not persuaded that it creates a genuine issue of material fact as to his CWCA claim for unpaid wages.   *See Bohn v. Park City Group, Inc.*, 94 F.3d 1457, 1463 (10th Cir. 1996) ("Defendants correctly point out, however, that plaintiff's affidavit contradicts his deposition testimony [. . .] thus the affidavit should not be considered.").   Mr. Garza is represented by counsel in this matter, and there is no reference to deposition testimony in which Mr. Garza attempts to clarify his otherwise unambiguous statement that he was paid his wages by Defendants.   To the extent that Plaintiff bases his claim under the CWCA on the theory that he was not paid for all the hours he claimed on his timesheet when he left Defendant's employ, Mr. Garza has failed "to establish the existence of an element essential to [his] case," *Celotex*, 477 U.S. at 322, as it appears undisputed that he was paid all of his earned wages at the time his employment with Western Stone terminated.   Therefore, this court respectfully RECOMMENDS that summary judgment be GRANTED on this theory, insofar as it pertains to hours billed and wages paid.[7]

---

[7] Mr. Garza also seeks relief for unpaid overtime under the CWCA, which this court interprets to be subsumed within the Fifth Claim for Relief.   [#42 at 8].   To the extent, however, Mr. Garza intended to pursue such a claim through his Fourth Claim for Relief, this court finds that the

The inquiry, however, does not end there.  As noted above, neither side specifically addresses Mr. Garza's allegation that his pay was illegally withheld pursuant to Colo. Rev. Stat. § 8-4-105 for rent.  It is unclear whether this theory is still being pursued by Mr. Garza or whether such a claim is viable (issues that the Parties should be prepared to address with Judge Blackburn), but this court finds that Defendants have not moved for summary judgment as to this theory and judgment as a matter of law on this theory is not appropriate on the briefing and record currently before it.

## IV.   Plaintiff's Equitable Claims

Defendants also contend that Plaintiff's Seventh and Eighth[8] Claims for unjust enrichment or quantum meruit, and promissory estoppel, respectively, should be dismissed because there is an express contract that relates to the same matter.  [#74 at 17].  The court looks at each of these claims in turn.

### A.  Unjust Enrichment or *Quantum Meruit*

Unjust enrichment and, similarly, quantum meruit, are judicially-created remedies "intended to prevent one party from unfairly benefitting to the detriment of another party." *Abercrombie v. Aetna Heath, Inc.*, --- F. Supp. 3d ----, 2016 WL 1259031, at *10 (D. Colo. Mar.

---

CWCA is not the appropriate vehicle for such a claim.  *See Young v. Dollar Tree Stores, Inc.*, No. 11–cv–1840–REB–MJW, 2012 WL 3704994, at *3 (D. Colo. Aug. 24, 2012) ("In Counts IV and V of her complaint, the plaintiff asserts claims under 'the Colorado Wage Act (C.R.S. 8–4–101, et seq.),' seeking payment of minimum wages and overtime allegedly not paid by Dollar Tree. . . . None of the statutes codified in part 1 of article 4 of title 8 of the Colorado Revised Statutes, the act cited by the plaintiff, concern payment of minimum wages or overtime, yet the plaintiff seeks to collect minimum wages and overtime under part 1 of article 4 of title 8 of the Colorado Revised Statutes. Thus, the allegations in the plaintiff's complaint do not state a plausible claim for relief under the statutory sections she cites in her complaint.")

[8] Plaintiff mistakenly characterizes his claim for promissory estoppel as a second "Seventh Claim," [#42 at 10], so this court renumbers them for the purposes of clarity.

31, 2016). Under Colorado Law, to recover under unjust enrichment a plaintiff must establish that "(1) at plaintiff's expense, (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo.2008). "In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003). However, courts recognize two exceptions to this principle: (1) "where the implied agreement is based upon the conduct of the parties subsequent to, and not covered by, the terms of the express contract," *Schuck Corp. v. Sorkowitz*, 686 P.2d 1366, 1368 (Colo. App. 1984); and (2) where a party has no right under an enforceable contract, *i.e.*, when an express contract failed or was rescinded, *Backus v. Apishapa Land & Cattle Co.*, 615 P.2d 42, 44 (Colo. App. 1980).

As to Mr. Garza's claim for unjust enrichment or quantum meruit,[9] Defendant argues that summary judgment is warranted because Plaintiff does not base his claim "upon the conduct of Plaintiff and Defendant Western Stone subsequent to, and not covered by, the terms of the express contract." *See* [#74 at 18]. Specifically, Defendants argue that Plaintiff's claim to compensation under theories of unjust enrichment or quantum meruit arise from Defendants' breach of the express employment contract; thus, there can be no basis for an implied contract theory of recovery. *See* [*id.*]. Plaintiff insists that both of the identified exceptions apply in this case;

---

[9] Defendants Motion for Partial Summary Judgment and reply address Mr. Garza's claims for unjust enrichment or quantum meruit, and his claim for promissory estoppel under the same heading and argues dismissal of both for the same reasons. The court, however, addresses Mr. Garza's claims for unjust enrichment or quantum meruit (Claim 7) separately from his promissory estoppel claim (Claim 8).

however, he only addresses the first.  *See* [#81 at 15].  Plaintiff argues that it is undisputed that

Defendants "never paid overtime to any of their employees, including Mr. Garza, for hours worked

in excess of 40," which indicates that the payment of overtime wages is conduct not covered by the

express contract.  [*Id.* (emphasis in original)].  Further, Plaintiff contends, "[t]he mere existence of

a contract with disputed terms and scope does not bar Mr. Garza from pursuing his contract claims

and, in the alternative, equitable claims through trial."  [*Id.*].  In reply, Defendants again reiterate,

this time citing supporting case law, that Plaintiff's claim is precluded because it arises under the

subject matter of the express employment contract, and that the FLSA merely sets the requirements

for overtime wages based on the negotiated hourly rate between the employee and employer.  *See*

[#86 at 4].

      Defendants are correct that Plaintiff cannot prevail on his claims for breach of contract and

his alternative theories of unjust enrichment and quantum meruit based on the same set of facts—

just as any double recovery is not permitted. *See Burlington Northern & Santa Fe Ry. Co. v.

Grant*, 505 F.3d 1013, 1029–1030 (10th Cir. 2007).  But neither party provides the court any facts

to evaluate.  Mr. Frysig presents his own interpretation of the contract that "[t]here was no conduct

of Plaintiff or myself or Western Stone subsequent to, and not covered by, the terms of the express

contract of which Plaintiff complains."  [#74-1 at ¶ 14].  Plaintiff argues that "[o]vertime is []

undisputedly outside the scope of any existing contract in this case."  [#81 at 15].  Neither side has

submitted the contract for the court's review.  Plaintiff also argues that it should be permitted to

proceed in the alternative because judgment on the contract theory has not been entered in his

favor.  [#81 at 15–16].  Mr. Garza insists that "the mere existence of a contract with disputed terms

and scope does not bar Mr. Garza from pursuing his contract claims and in alternative, his

equitable claims throughout the trial.  [*Id.* at 16].

The existence of an express contract that covers Mr. Garza's allegations is a question of fact, *see Interbank Investments, LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003), that frankly, cannot be resolved on the record currently before the court.  And, Plaintiff is correct that he may proceed in the alternative, *Clyne v. Walters,* No. 08–cv–01646–MSK–CBS, 2009 WL 2982842, at *3 (D. Colo. Sept. 16, 2009).  Given the fact that Mr. Garza is proceeding to trial on other issues, this court respectfully RECOMMENDS that summary judgment be DENIED with respect to Mr. Garza's claim for unjust enrichment or quantum meruit, in favor of determination at trial, as appropriate, by Judge Blackburn as a matter of law or by the factfinder.[10]

### B.  Promissory Estoppel

Under Colorado Law, "[t]he elements of a promissory estoppel claim are: (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promise; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice."  *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008).  However, recovery in Colorado on a theory of promissory estoppel is permissible when there is no enforceable contract.

---

[10] This court acknowledges that other courts in this District have held that an unjust enrichment claim cannot survive summary judgment in the face of a viable breach of contract claim, when the two claims cover the same subject matter.  *Echostar Satellite, L.L.C. v. Splash Media Partners, L.P.,* No. 07–cv–02611–PAB–BNB, 2010 WL 3873282, at *9 (D. Colo. Sept. 29, 2010).  This court distinguishes this instant action from *Echostar* in two ways.  First, based on the record before the court, it is not clear that the two claims are based on the same factual subject matter.  Second, this court reads *Interbank Investments, LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003), upon which the *Echostar* court relies, to stand for the proposition that once a party prevails on a contract claim – regardless of the amount of monetary recovery – then an equitable unjust enrichment claim is precluded.  *Id.* at 817.

*Wheat Ridge Urban Renewal Auth. v. Cornerstone Group XXII, L.L.C.*, 176 P.3d 737, 741 (Colo. 2007). Thus, if a plaintiff fails to prove a breach of contract claim, he or she may nevertheless be able to recover on a promissory estoppel claim. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo.1987).

As to Plaintiff's promissory estoppel claim, Defendants argue that Plaintiff is precluded from being such a claim because it arises from the same subject matter as the express employment agreement. *See* [#74 at 19–21]. In addition, Defendants argue that none of the aforementioned exceptions applies, which would allow Plaintiff to recover under a quasi-contract theory when an express contract exists. *See* [*Id.*; #86 at 3–4]. Plaintiff contends, "[t]he mere existence of a contract with disputed terms and scope does not bar Mr. Garza from pursuing his contract claims and, in the alternative, equitable claims through trial." [#81 at 15]. For the same reasons as articulated with respect to Plaintiff's claim for unjust enrichment or quantum meruit, this court respectfully RECOMMENDS that summary judgment be DENIED as to the claim for promissory estoppel.

To be clear, this Recommendation does not pass on whether these equitable claims (or, for all intents and purposes, any of Plaintiff's claims) are viable, after the presentation of Plaintiff's affirmative case-in-chief, or in light of the determinations on other claims, such as the breach of contract claim. This Recommendation simply finds, based on the record currently before the court, that Plaintiff be permitted to proceed to trial on these equitable claims, in the alternative.

## CONCLUSION

For the foregoing reasons, the court respectfully **RECOMMENDS** that:

(1)     Defendants' Motion for Partial Summary Judgment [#74] be **GRANTED IN**

**PART** and **DENIED IN PART**;

(2)     As to Plaintiff's First Claim for Relief for Breach of the Fair Labor Standards Act (FLSA) 29 U.S.C. §§ 201 *et seq.*, summary judgment be **DENIED**;

(3)     As to Plaintiff's Third Claim for Breach of Fiduciary Duty and Civil Theft Under the Colorado Trust Fun Act C.R.S. §§ 38-22-127, 18-4-401, 18-4-405, summary judgment be **DENIED**;

(4)     As to Plaintiff's Fourth Claim for Relief for Willful Withholding of Wages Pursuant to the Colorado Wage Claim Act, C.R.S. §§ 8-4-101 *et seq.*, insofar as it is based on a theory that Plaintiff Eloy Garza was not paid all the wages as specified in his timesheets, summary judgment be **ENTERED** in favor of Defendants Western Stone of Lyons LLC and Paul W. Frysig and against Plaintiff Eloy Garza, but **DENIED** as to Plaintiff's theory of wrongful withholding of rent;

(5)     As to Plaintiff's Seventh Claim for Unjust Enrichment or Quantum Meruit, summary judgment be **DENIED**;

(6)      As to Plaintiff's Seventh [sic] (Eighth) Claim for Promissory Estoppel, summary judgment be **DENIED**.[11]

---

[11] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the

DATED: October 13, 2016                    BY THE COURT:

                                           s/Nina Y. Wang
                                           United States Magistrate Judge

---

proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).